## HARRISON vs. McMAHON.

*In the matter of the application of* SAMUEL C. HARRISON
*for administration with the will annexed of* RUTH S.
RATHBONE, *deceased.*

THE person entitled to a preference in administration cannot be excluded from
his right, except in the cases enumerated in the statute.

No degree of legal or moral guilt, or delinquency, is sufficient to effect such
exclusion, unless the person has been convicted of an infamous crime.

The applicant may be excluded, if he be incompetent to execute the duties of
the trust by reason of drunkenness, *improvidence*, or want of under-
standing.

The statute recognizes a difference between such hazardous occupations as place
a person in *precarious circumstances*, and such a want of care and fore-
sight in the management of property as indicates *improvidence*. In the
former case, uncertain responsibility, in the latter, incompetency or want of
capacity, are intended.

The single fact that the applicant for administration is a professional gambler,
is not of itself sufficient to establish his incompetency by reason of improvi-
dence, and thus to debar him from the preference or right to administration
secured to him by statute, when it also appears that he has been successful
in the pursuit, has accumulated money, and there is no evidence of want of
care or prudence in managing the property thus acquired, or of inaptitude
for business, or of extravagance in expenditure.

The Surrogate may open an order entered on the default or non-appearance of
a party.

Where on a citation to a person entitled to a prior right to administer he does
not appear, and an order is entered for the grant of administration to the
applicant, but he neglects to perfect the requisite bond, the party having
the preference, on appearing may receive letters.

ALBERT MATHEWS, *for Petitioner.*
RALPH LOCKWOOD *and* D. McMAHON, *for Contestants.*

THE SURROGATE. The applicant is one of the sons and
legatees of the testatrix. Mr. McMahon and wife, in her
right as a daughter and legatee, object to the grant of let-
ters, on the ground that the applicant is incompetent to
execute the duties of the trust by reason of improvidence.
(2 *R. S.*, *3d ed.*, *p.* 139, § 33.) The section of the statute

under which this objection is made, reads as follows : "No letters of administration shall be granted to a person convicted of an infamous crime, nor to any one incapable by law of making a contract, nor to a person not a citizen of the United States, unless such person reside within this State; nor to any one who is under twenty-one years of age, nor to any person who shall be judged incompetent by the Surrogate to execute the duties of such trust, by reason of drunkenness, improvidence, or want of understanding, nor to any married woman, but where a married woman is entitled to administration, the same may be granted to her husband in her right and behalf." There can be no doubt that a person entitled to a preference in administration cannot be excluded from his right by the Surrogate, except in the cases enumerated in the above provision. In the construction of this section, the Chancellor, in *Coope* vs. *Lowerre*, 1 *Barbour's Ch. R.*, *p.* 46, has remarked, that "no degree of legal or moral guilt, or delinquency, is sufficient to exclude a person from the administration as the next of kin, in the cases of preference given by the statute, unless such person has been actually convicted of an infamous crime ; and the conviction intended by the statute must be upon an indictment or other criminal proceeding." In determining the question now before me, I must, therefore, dismiss from my mind the consideration of the moral guilt and turpitude which may characterize such habits of life as the applicant has been engaged in, and confine myself entirely to the simple, abstract proposition, whether the facts which have been proved intimate such a degree of improvidence as in my judgment render him incompetent to execute the duties of the trust of administrator. In improvidence, as in other characteristics, there are of necessity degrees from the extreme of habitual and thoughtless waste and extravagance, to occasional or rare improvidencies. The degree requisite to sustain the exclusion of a man who seeks to be an administrator, must be such as to render him "*incompetent*

to execute the duties of the trust." Neither a single nor several acts establish a habit or peculiar trait of mind. A continued repetition only has that effect. Nor can the circumstances attending their commission be disregarded in arriving at a conclusion as to the character of the party. I am far from justifying an evil habit, and know how easily, step by step, indulgence, however moderated at first, leads to excess in the end. But still, in passing upon the competency of a man who claims a certain right, it is necessary to keep from anticipating or speculating as to the future, and to fasten down the attention to the present. There are many who indulge in drinking who cannot be called drunkards, and there are many men of wealth, of good business habits, largely engaged in trade or other pursuits requiring prudence and foresight, who might frequently lose small sums in betting or gaming, without exposing themselves to the inference of improvidence, whatever might be thought of the morality of such a practice.

The charge made against the petitioner in this case is, that he is addicted to gambling and betting, and has no regular business except that of a gambler. Until immediately preceding this application, the petitioner has resided at Santa Fé, New Mexico, and the evidence adduced in support of the allegation consists of a letter written by him in November, 1848, to his parents in New-York, in which he admits that he is engaged in gambling, and is the keeper of "a bank," and boasts of having been very successful. That an occupation of this kind may be licensed at Santa Fé, seems to me no more material than that it is illegal by the Common Law, or by the statute of New-York. If the applicant had been guilty even of an infamous crime, I could not hold it a bar, unless the record of his conviction were produced; and the immoral or criminal nature of the act of gambling is irrelevant of itself to the question before me, except so far as it bears upon the issue of "improvidence." "There are few or none who by our law are disabled on account of their crimes from

being executors." (*Williams on Executors, p.* 192.)
" From the earliest time it has been a rule that every per-
son may be an executor, saving such as are expressly for-
bidden." (*Ibid.,* 186.) When, therefore, it is urged that
our statute regards the keeper of a gaming house as a " va-
grant" (2 *R. S., p.* 139, § 32), in which respect the Com-
mon Law is accordant (1 *Bann. & C.,* 272), I can only re-
gard these as statutory and judicial declarations of the
criminal law, and in that sense, not pertinent to the present
inquiry, which relates to the competency or incompetency
of Mr. Harrison to execute the duties of an administrator.
He may have made himself liable to be called a " vagrant,"
and yet be abundantly competent to manage property.
He may have no lawful pursuit or occupation, and yet be
possessed of the means of living, and be prudent in their
management. His occupation may be unlawful, exposing
him to many dangers, and still, in defiance of law, profita-
ble. This Court is not the place for regulating such mat-
ters, or for punishing unlawful and criminal courses of life.
In England, where a large latitude is allowed to the Ordi-
nary in selecting an administrator, or under our statute,
when the Surrogate can choose among persons equally
entitled to administration, such circumstances would un-
doubtedly be of weight in determining the preference
between them, but where the law fixes the rule of prefer-
ence, it can only be set aside in the cases specified in the
statute.

The Chancellor defines the improvidence which is made
a ground of exclusion by the statute, to be " that want of
care or foresight in the management of property, which
would be likely to render the estate and effects of the in-
testate unsafe, and liable to be lost or diminished in value
by improvidence, in case administration thereof should be
committed to such improvident person. The principle of
exclusion in this part of the statute, is based upon the well-
known fact that a man who is careless or improvident, or
who is wanting in ordinary care and forecast in the acqui-

sition and preservation of property for himself, cannot with safety be intrusted with the management and preservation of the property of others. The fact that a man is dishonest, and seeks to obtain the possession of the property of others by theft, robbery, or fraud, is not evidence either of his providence or of his improvidence; for the dishonest man who preys upon the rights of others, and deprives them of their property by unlawful means, may be, and frequently is, not only careless, but perfectly reckless in squandering the property which he has thus acquired; or he may, on the other hand, preserve and hoard up his ill-gotten gains with all a miser's care." In that case, that learned Judge came to the conclusion from the evidence, that the applicant for administration, "certainly was grossly negligent in the management of his property and affairs, and in the contracting of debts, by endorsing for strangers, or for men without visible means of payment. "But after all," he said, "I cannot bring my mind to the conclusion that he is improvident to such a *degree* as to render him incompetent to discharge the duty of an administrator." (1 *B. C. R.*, 46.)

Now there is no evidence before me that the applicant is devoid of care in the preservation of his property, or that he is reckless in spending it, except from the insight gained of his habits from the letter previously referred to. In that he says, "Never since I left my home have I wronged any one except in gambling. I have got about seven thousand dollars, and as soon as I get ten I shall start for my sweet home." "I am dealing a very large game. I open my bank with twenty-five hundred dollars every night." " In the last week I have won twenty-seven hundred dollars. I have a mortgage on the United States Hotel for twenty-five thousand dollars," &c. There is no ground, therefore, for presuming that, as a matter of fact, the man engaged in this unworthy occupation was squandering his property, but on the contrary his letter, which is all the proof before me, indicates that he was successfully

accumulating money. It is urged, however, that gambling is *per se* evidence of improvidence. (See *Matter of Post, Dayton's Surrogate, Appendix.*) A man who habitually loses sums disproportioned to his means is manifestly improvident, but one who upon the whole gains, can hardly be termed improvident, though leading an idle and vicious life. The counsel in opposition contends, that whether a man gambles successfully or unsuccessfully, cannot with propriety be inquired into, the pursuit being an illegal one, and the law adjudging it to be " the worst species of improvidence." Were this so, were the gamester excluded by the statute which settles the order of preference in administration, there would be an end to the discussion. But the exclusion turns upon incompetency by reason of improvidence, and the simple question is, whether in fact this applicant is so incompetent. The statute in using the word " incompetent," intends, I think, a want of capacity, and in requiring an executor who is in " precarious circumststances" to give security, recognizes the difference between being embarked in uncertain and dangerous speculations, and such careless and reckless habits in the management of property, as show the absence of ordinary business capacity. The absorbing, ruinous, and demoralizing effect of habitual gaming is such, that the loss of fortune and reputation, generally speaking, may be safely prophesied of one addicted to it; but there are steps in this downward career which may be predicted, and yet not now be in fact existing. The same may be said of every vice, and yet the same rule cannot be applied to one entering upon the threshold, as to one far advanced, for the law has to do with things as they are, and not with speculations. Abstractly, the mere ingredient of chance, as it is called, which mingles so largely in the affairs of life, and affects the determination of so many important events, is not of itself sufficient to make those improvident who trust to it. Chances admit of combinations with skill, and of such arrangements, that chances ordinarily equal may be made to

preponderate upon the whole in a certain direction. Upon this well-known principle, many insurances are made profitable. I might, in this connection, advert also to the difference between those who are the prey of others,—who, drawn or enticed into the hazards of the gaming table, are the victims at once of their own passions, and the coolness of the professional gamester,—and those, who like the applicant, live upon the frailties and the imprudence of others, who make a business of chance, and though venturing large sums of money, do it by method, with the understanding that the chances, by precise arrangement, are in favor of what is called " the bank." But I prefer to leave the case on the facts as they are put before me. Is a successful gambler incompetent, by reason of improvidence, to manage the affairs of others? I think not, for though he risks much, and by possibility might be ruined in a single night, yet in fact, he gains, he is accumulating; and while following a precarious occupation, is gathering wealth. In face of the fact, how can I follow a theory? Again, there is no proof in the case, of want of prudence on the part of the applicant, in preserving and managing his property, when acquired; nor of inaptitude or unfitness for business, want of care in his affairs, recklessness or extravagance in expenditure; but I am asked on the single fact that he is the keeper of what is known as a " bank," where large sums are risked, and large sums nightly gained, to adjudge him incompetent, by reason of improvidence, to execute the duties of a trust. Were this a proceeding to compel an executor to give bonds on the ground of his circumstances being precarious, the uncertain and hazardous *nature* of the occupation would be *prima facie* ground for the application; but an administrator must give bonds in any event, and it is not enough in such a case to show that he is engaged in a pursuit eminently hazardous, but he must appear to be characterized by that want of care or foresight in the management of property, which would be likely to render the estate and effects of the intestate unsafe, and

37

liable to be lost or diminished in value, by improvidence. I cannot infer this to be actually the case from the facts before me, and though I have feelings of hostility against a vicious trade, which the law abhors, I cannot allow my mind to be prejudiced by them against a right secured by statute, and of which the applicant cannot be deprived, except, in my judgment, he is *incompetent* to execute the duties of his trust. The order must, therefore, be for the issuing of the letters, on his executing the bond with two good and sufficient sureties, who will justify in the usual manner.

In the course of the case, two matters have been decided, incidentally affecting the proceedings.

The offer on the part of Mr. McMahon, to perfect the bond and consummate the proceedings upon his application for administration, was, I think, upon a review of the decision, rightly rejected. It is true, Mr. Harrison had been cited by public advertisement, but no order had been formally entered, the bond had not been perfected, and of course, letters not issued, and the matter had thus been allowed to remain, until Mr. Harrison appeared to claim his preference. Even if a regular order had been entered, I had a right to open it as on a default (1 *Barb. Ch. R.*, 452), or to treat it as an order on a condition to give certain security which had not been done. It cannot be that a party by making an application for administration, and not perfecting the proceedings, can keep open the administration for months, or indefinitely, to the prejudice of any one who has a better right, and yet, when the latter appears, throw himself back upon those uncompleted proceedings. There being in fact no administration, and Mr. Harrison having a preference to his sister, it would have been regular under the statute to have granted him administration *ex parte*, treating Mr. McMahon's previous application, unperfected, as a nullity. The notice I required him to give was merely precautionary, in case the previous applicant should have any objection to urge.

In regard to the commission and the stay of proceed-

ings, I considered the latter as entirely discretionary with me ; and in view of the subject matter, an administration which for convenience of parties in interest, ought to be wound up ordinarily in 18 months, the previous delay in administering the estate growing out of an application to remove the executor now deceased ; the time which would necessarily elapse before the return of the commission, the nature of the facts sought to be established, which in the main, sufficiently appeared from the letter of Harrison, already in evidence, it seemed to me unreasonable to tie up the case, probably to the injury of the estate, and without the hope of any very great or material change in the position of things, arising out of a change in the facts or proofs. I, therefore, decided against that branch of the motion.